GEORGE C. STEVENS AND H. H. GRAHAM, AS PARTNERS UNDER THE FIRM NAME OF STEVENS, GRAHAM & CO., PLAINTIFFS IN ERROR, VS. DANIEL G. AMBLER, DEFENDANT IN ERROR.

Under an agreement reading, "we * * * hereby agree to and with A. to pay him or his assigns five thousand dollars, when said A. shall extend his railroad southerly to section 35, town. 14, range 19, provided said railroad is so extended and in operation by October 1, 1891; and in case we sell our property at the price already named to parties contemplating buying (viz: fifty dollars per acre) then, in that event, we hereby —— to pay said A. ten thousand dollars instead of five thousand dollars as above. (Signed) S. G. & Co.," the extension of the railroad southerly to said section 35 is a condition precedent to the makers' liability for any amount thereunder, notwithstanding the makers sell their property to the parties,

37

and at the price contemplated by such agreement. Such con-
·dition precedent is not performed by extending the railroad
·southerly beyond, but five hundred feet away from said sec-
·tion 35.

Writ of Error to the Circuit Court for Marion
county.

### STATEMENT.

The defendant in error on February 10, 1893, began
an action of assumpsit against the plaintiffs in error
in the Circuit Court of Marion county. . The declara-
tion, filed March 27, 1893, alleged that the defendants,
as copartners, on May 6, 1891, entered into a contract
and agreement with the plaintiff as follows: "We,
the undersigned, Stevens, Graham & Co., hereby agree
to and with Daniel G. Ambler to pay him or his as-
signs five thousand dollars, when said Ambler shall
extend his railroad southerly to section 35, town. 14,
range 19, provided said railroad is so extended and in
operation by October 1, 1891; and in case we sell our
property at the price already named to parties con-
templating buying (*viz:* fifty dollars per acre) then, in
that event, we hereby —— to pay said Ambler ten
thousand dollars instead of five thousand dollars as
above., (Signed) Stevens, Graham & Co., per G. C.
Stevens;" that thereafter, to-wit: on the 30th day of
September, 1891, the plaintiff did fully perform and
complete the conditions of the said contract so far as
they were to have been performed and completed by
him; whereupon the said Stevens, Graham & Co. be-
came indebted and promised to pay to the plaintiff the
sum of five thousand dollars as per said contract; and
thereafter, to-wit: on the —— day of —— 189–, the
said Stevens, Graham & Co. did sell the property con-

templated in the said contract to the parties then contemplating the purchase thereof at the price of $50 per acre, whereupon the said Stevens, Graham & Co. became indebted to and promised to pay plaintiff the additional sum of five thousand dollars as per said contract; but the said Stevens, Graham & Co., although so indebted in the total sum of $10,-000, and having by the contract aforesaid promised to pay said sum, and although payment thereof had been repeatedly demanded by the plaintiff, had nevertheless refused to pay the same.

The defendants on April 3, 1893, filed two pleas, alleging, first, that plaintiff did not extend his railroad southerly to section 35, township 14, R. 19, as was intended by said contract, and as contemplated by it; and did not extend said road to sec. 35 and have the same in operation by October 1, 1891, and did not on the 30th September, 1891, perform and complete the conditions of said contract as alleged in the declaration; second, that they did not sell the property mentioned in the contract for $50 per acre, except about one-half thereof, which half they sold for $46 per acre, and for that reason they did not become indebted to the plaintiff in said additional sum of $5,000.

The plaintiff sued out ancillary garnishments and an attachment against defendants' property, but as no point concerning them is involved, it is unnecessary to notice them further.

Issue having been joined on defendants' pleas, the cause was by consent referred to Hon. J. J. Finley, as referee who, after hearing the evidence submitted by the parties, rendered judgment for plaintiff in the sum of $11,216.66 December 15, 1893. The referee denied

defendants' motion for a new trial, and from the judgment rendered by him this writ of error was sued out.

It was shown by the evidence that in the early part of May, 1891, the plaintiff was the owner of a railroad called "Ambler's Railroad," which then extended from the town of Archer, in a southerly direction about eight miles, to a point near Williston. The phosphate operators in the "Early Bird section" desired the road extended further in a southerly direction, and the defendants executed to plaintiff the paper sued upon as their contribution for this purpose, they at the time owning phosphate lands in the section 35 mentioned in the agreement, as well as other lands north in the same township and range. The road was extended in a southerly direction before October 1, 1891, passing parallel with but about 500 feet from the nearest boundary of the section 35 mentioned in the contract, to and a little beyond the Early Bird mines, the latter mines being located east of south from the land mentioned in the contract. At the time the contract was executed no definite line for the location of the extension of the road had been determined upon by plaintiff. Other facts are referred to in the opinion.

The other facts in the case are stated in the opinion.

*John G. Reardon*, for Plaintiffs in Error.

No appearance for Defendant in Error.

CARTER, J.:

1. It is assigned as error that the referee erred in refusing defendants' motion for a new trial. One ground of this motion was that the evidence was insufficient to show that plaintiff performed his part of the contract

sued upon.   This agreement was unilateral and condi-
tional, and in order to entitle plaintiff to a recovery
thereon, it devolved upon him to prove that the condi-
tions entitling him to payment of the money thereby
contracted to be paid had been fully performed within
the time specified there.   It was held by this court in
Martin vs. Pensacola and Georgia Railroad Co., 8 Fla.
370, S. C. 73 Am. Dec. 713, that where in the body of a
subscription there is a stipulation for a particular en-
terprise as for the building of a road to a particular
place, or for its location upon a specified route, such
stipulation forms a condition precedent, and unless
strictly complied with, the party subscribing will be
absolved from his obligation to pay.   The same prin-
ciple was applied in the case of Persinger vs. Bevill,
31 Fla., 364; 12 South. Rep. 366, where a railroad
was not completed and ready for operation until two
months after the time limited in the obligation sued
upon.   It was there said that parties have the right
to make their contracts so as to suit their mutual con-
venience and interests, and when the courts can ascer-
tain their meaning, they should so construe the con-
tract as to give effect to that meaning.   It was admit-
ted by the plaintiff in his evidence before the referee
that the extension of his railroad did not touch the
land mentioned in the contract, but ran about 500
feet therefrom.   The defendants' obligation was to
pay when plaintiff "shall extend his railroad south-
erly *to* sec. 35;" not when the railroad shall have been
extended within 500 feet of sec. 85.   "To" an object,
does not mean within 500 feet thereof.   As commonly
used in this connection, it conveys to the mind the
idea of movement toward and actually reaching a
specified point or object, and the meaning is not satis-

fied unless the point or object be actually attained. Moran vs. Lezotte, 54 Mich., 83, 19 N. W. Rep. 757. It is true that like almost all other words of our language, it may be used in a different or more limited sense, and it will be so construed whenever the context, or the nature of the subject-matter to which it is applied, shows an intention to use it in such other sense. But in the case before us we discover nothing whatever to suggest a meaning different from the one above given; and as it is clear that the extension of plaintiff's railroad was not "to" section 35, we think the defendants cannot be held liable for any amount under the contract sued upon. It may be that the defendants derived every benefit from the extension of the railroad as shown by the evidence that they would have derived from a strict compliance with the contract, though the evidence submitted to the referee indicated very strongly a contrary view; but we can not hold the defendants liable upon the facts of this case without substituting a new agreement for them, which no court is authorized to do. The courts have been frequently called upon to adjudicate similar questions, and they are practically unanimous in denying recovery where the conditions have not been substantially complied with. Moore vs. Hanover Junc. and Susquehanna R. R. Co., 94 Pa. St., 324; Lawrence vs. Smith, 57 Iowa, 701, 11 N. W. Rep. 674; Cooper vs. McKee, 53 Iowa, 239, 5 N. W. Rep. 121; The Davenport & St. Paul R. Co. vs. Rogers 39 Iowa, 298; The Davenport & St. Paul R. R. Co. vs. O'Connor, 40 Iowa, 477; Connecticut & Passumsic Rivers R. R. Co. vs Baxter, 32 Vt., 805; The Indianapolis, Delphi and Chicago R. R. Co. vs. Holmes, 101, Ind. 348; Crane vs. The Indiana North and South Ry. Co., 59 Ind. 165; City of

Winona vs. Minnesota Railway Const. Co., 27 Minn., 415, 6 N. W. Rep. 795, 8 N. W. Rep. 148.

II. There was very indefinite testimony tending to show sales of defendants' lands made by them at $50 per acre. On the other hand there was evidence tending to show sales at not exceeding $47 per acre. Whether the lands sold by defendants constituted the property referred to in the contract, the evidence does not definitely disclose. The referee evidently found that the lands so sold were the ones referred to in the contract and that they were sold at $50 per acre, for on no other theory could he have given judgment for an amount exceeding $5,000 and interest under the terms of the contract. But even if the defendants did sell their lands at $50 per acre as contemplated at the time of entering into the contract sued upon, we are of opinion that no liability to plaintiff under the contract sued upon, attached, unless and until the plaintiff extended his railroad "to section 35." Any other construction of the contract would leave the last clause without any consideration whatever. We think the contract on its face purports to bind defendants to pay plaintiff ten thousand dollars in case they sold their property to parties contemplating buying at $50 per acre, or five thousand dollars in case they did not sell the property, upon condition that plaintiff should extend his railroad southerly to section 35, and have same in operation by October 1, 1891. The concluding words of the last clause, "then, in that event, we hereby (agree) to pay said Ambler *ten thousand* dollars, *instead* of *five thousand* dollars, *as above*, can bear no other reasonable interpretation. This construction is not only consistent with, but emphasized by, the plaintiff's testimony respecting the making of

the contract, from which we quote as follows : ''I had about nine or ten miles of road built from Archer down—about eight miles of road—down to a point near Williston, and the phosphate men in that section—the Early Bird section and through there—came to me and wanted me to extend it southerly, and I agreed to extend it for and in consideration of amounts they were to give me. As a rule they gave me $5,000 cash in advance. Mr. Stevens was in my office in Jacksonville and said he would *contribute*, and made that contract to give $5,000 on one event, or $10,000 on another. That was not to be paid in advance.

The plaintiff having failed to perform the condition precedent, *viz :* the extension of his railroad southerly to section 35 by October 1, 1891, he was not entitled to recover anything upon the contract sued upon. The judgment is, therefore, reversed and a new trial granted.